# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| **ALBERT L. GLENN and** | * | **CHAPTER 7** |
| **JANET A. GLENN,** | * | |
| Debtors | * | |
| | * | **CASE NO. 1:11-bk-02164MDF** |
| **AGCHOICE FARM CREDIT, ACA,** | * | |
| Plaintiff | * | |
| | * | |
| v. | * | **ADV. NO. 1:11-ap-00324MDF** |
| | * | |
| **ALBERT L. GLENN and** | * | |
| **JANET A. GLENN,** | * | |
| Defendants | * | |

## OPINION

Before me is the motion of AgChoice Farm Credit, ACA ("AgChoice") for partial

summary judgment on its complaint against Albert and Janet Glenn ("Debtors"). AgChoice is a

creditor holding a claim secured by an interest in Debtors' former residence. In its complaint,

AgChoice alleges that after it commenced foreclosure proceedings, Debtors willfully and

maliciously removed fixtures from the residence, converted them to their own use, and damaged

the premises in the process. For the reasons set forth below, AgChoice's partial motion for

summary judgment will be denied.

The complaint consists of four counts, but AgChoice has since abandoned the claims for

denial of Debtors' discharge and for declaratory relief.[1] In the first of two remaining counts,

AgChoice avers that Debtors inflicted willful and malicious damage to AgChoice's collateral,

---

[1] In Count II, AgChoice sought denial of Debtors' discharge under 11 U.S.C. § 727(a)(2). In its brief, AgChoice stated that it was no longer pursuing this count of the complaint. AgChoice also acknowledged in its brief that the relief sought in Count IV was moot because Debtors' conduct at issue occurred pre-petition, and declaratory relief was not appropriate. Therefore, Counts II and IV will be deemed withdrawn.

therefore, the underlying debt should be excepted from discharge under 11 U.S.C. § 523(a)(6). In the second count (Count III), AgChoice avers that Debtors' actions constitute conversion under state law.

## II. Factual Findings

On November 23, 2005, May 2, 2006, and October 18, 2006, Debtors obtained personal loans from AgChoice in the principal amounts of $160,000, $280,000, and $100,000, respectively. In exchange for these loans, Debtors executed three promissory notes (hereinafter "the Notes") and three mortgages (hereinafter "the Mortgages"). The property subject to the Mortgages was Debtors' home, a dwelling consisting of approximately 6600 square feet of living space located on a fourteen-acre parcel of real estate near Dillsburg, York County, Pennsylvania (hereinafter "the Property"). After making the loans to Debtors, AgChoice loaned $550,000 to Grogle Development Company, LLC ("Grogle"), in which Debtor Albert Glenn ("Albert") held a 50% interest. Debtors guaranteed the Grogle loan and executed a fourth mortgage on the Property to secure the guaranty.

The parties agree that the descriptions of the collateral covered by the Mortgages are identical. Paragraph 2 of each mortgage specified that the lien granted included "all hereditaments and appurtenances [t]hereunto belonging, . . . and all improvements thereon and all fixtures and accessories now or [t]hereafter annexed and attached [t]hereto." At paragraph 10, Debtors agreed to maintain the Property in good repair and not to commit waste.

On or about August 31, 2010, AgChoice notified Debtors that they were in default under the terms of the Notes. On or about September 2, 2010, AgChoice issued pre-foreclosure notices to Debtors as required by Pennsylvania law. In response, Debtors notified AgChoice that they

2

intended to sell the Property, and soon thereafter, they listed the Property for sale through a realtor at a price of $689,900. Debtors' sales literature described the Property, built in 2007, as including three separate living quarters with seven bedrooms, five full baths and two kitchens. Other advertised features included geothermal heating and cooling, two fireplaces with wood burning stoves, ceiling fans, garage door openers, and smoke detectors. Photographs of the Property used in the sales literature displayed large kitchens with custom-built cabinetry, rooms with raised-panel doors and moldings, and bathrooms with attached fixtures, vanities and counter tops. Generally, the photographs showed a well-appointed home in good repair.

In January 2011, AgChoice entered judgment in the amount of $457,123.54 against Debtors on the guaranty of the Grogle loan. In March, AgChoice obtained a judgment in the aggregate amount of $541,561.54 on the Notes. Responding to the entry of these judgments, Debtors filed the instant bankruptcy petition on March 29, 2011. On schedule A of their petition, Debtors stated that the Property was worth $689,900, the same value Debtors gave when they listed the Property for sale. After they vacated the Property and filed bankruptcy, Debtors reduced the asking price for the Property from $689,900 to $465,000.

On April 21, 2011, AgChoice obtained an Order granting it relief from the stay to pursue its state court remedies against the Property. Debtors had previously vacated the Property and did not contest the motion. When they left the Property, Debtors removed numerous items attached to the structure when it was valued at $689,900. These items include: two garage door openers; five thermostats; two wood stoves; approximately fifteen (15) kitchen cabinets; a kitchen island; the kitchen sink; kitchen counter tops; nine (9) ceiling lights and fixtures; sixteen (16) doors; numerous door knobs and handles; the door frames and trim of three door units; three

3

commodes; four bathroom mirrors; two bathroom lights; and two bathroom vanity tops with sinks and faucets. Photographs of the premises taken after Debtors vacated the Property show large holes in the wall where items were removed and damage to the floors. One of the kitchens was stripped bare to the walls.

Debtor Janet Glenn ("Janet") testified at deposition that she and her husband believed that the items they removed were personal property and, thus, were not subject to AgChoice's mortgages. The advice Debtors received that these items could be removed was not obtained from their bankruptcy counsel, but from their daughter-in-law, who is a real estate agent, and from other unidentified individuals. Janet also stated that they took the items because they "needed to use them in [their] new house" and explained that they were living with their son and his family in a house he was rehabilitating. (J. Glenn Dep. 14, Sept. 26, 2011). Janet admitted that when the residence was listed for sale they intended for the kitchen cabinets, counter tops, lighting fixtures, sinks, and toilets that they removed to be sold with the home, but insisted that they had planned to take the appliances. She also stated that they took the thermostats because "the house [they] were moving into was a repossessed home, and [they] needed to use some of those items. (J. Glenn Dep. 18-19, Sept. 26, 2011.) Janet admitted that one of the kitchens had been stripped to the walls. When asked why they did not remove cabinets from the other kitchen in the Property, Janet responded: "We didn't need them." (J. Glenn Dep. 19, Sept. 26, 2011.) She also explained that they took several of the door handles because they were a handicap-accessible spring type that they needed at their new house. After being advised by their attorney that they should not have removed certain items, Debtors obtained replacement doors, commodes, door handles and cabinets. The doors, commodes, and door hardware were placed in the garage on the

4

Property for storage, and the cabinets were stored in an outside shed.

## II. Procedural History

On July 1, 2011, AgChoice filed the instant adversary complaint. On August 10, 2011, Debtors filed a *pro se* answer to the complaint admitting that they had removed many of the items as alleged by AgChoice.[2] On November 22, 2011, AgChoice filed the motion for summary judgment that is now before me. Several exhibits were attached to the motion, including copies of the Mortgages and Notes, photographs of the interior of the Property taken both before and after Debtors removed numerous items of property attached to the interior of the dwelling, and transcripts of the depositions taken of both Debtors on September 26, 2011. On December 7, 2011, Debtors filed an answer to AgChoice's summary judgment motion. The matter is ready for decision.[3]

## III.  Discussion

In the motion before me, AgChoice seeks a determination that, based  upon the exhibits and Debtors' testimony at deposition, it has established that its claim arose from a willful and malicious injury to its property interest inflicted by Debtors through the conversion of its

---

[2]Debtors were represented by counsel when they filed their Chapter 7 petition, but they are not represented by counsel in this adversary case.

[3]This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334.  This matter is core pursuant to 28 U.S.C. §157(b)(2)(A), (I) and (O). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052.

collateral. Therefore, AgChoice argues, its claim should be excepted from discharge under 11 U.S.C. § 523(a)(6).[4]

*A. Summary Judgment*

A court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts" such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c) (as incorporated by Fed. R. Bankr. P. 7056). In deciding a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. *Mabey Bridge & Shore, Inc. v. Schoch*, _____ F.3d ___, 2012 WL 180872 (3d Cir. January 24, 2012). "All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. . . ." *Fisher v. Matthews*, 792 F. Supp.2d 745, 770-771 (M.D. Pa. 2011) (citing *White v. Westinghouse Elec. Co.,* 862 F.2d 56, 59 (3d Cir. 1988)). The inquiry on summary judgment is whether the parties' dispute is so one sided that one party must, as a matter of law, prevail over the other. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The party moving for summary judgment has the initial burden of establishing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has satisfied its burden, the non-movant must either present affirmative evidence supporting its version of the facts or refute the movant's contention that it is entitled to judgment as a matter of

---

[4]In its brief, AgChoice requests summary judgment on Count III (conversion), which is based on the same factual allegations as its cause of action under § 523(a)(6). Because the state law claim for conversion is subsumed in its claim for willful and malicious injury under § 523(a)(6), I will only address AgChoice's motion for summary judgment on Count I.

6

law. *Anderson,* 477 U.S. at 256–57. However, "[a] party opposing . . . summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

    *B.  Section 523(a)(6)*

    "A discharge under section 727 . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or the property of another entity." 11 U.S.C. § 523(a)(6). The creditor asserting that its debt is excepted from discharge under § 523(a)(6) bears the burden of proving its case by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). Therefore, AgChoice must demonstrate that as a matter of law Debtors' conversion of its property was committed willfully and with malice.

    Conversion of a secured party's collateral can be both a breach of contract and an intentional tort. Every act of conversion, however, does not produce a willful and malicious injury. *See Davis v. Aetna Acceptance Co*., 293 U.S. 328 (1934), *cited in GMAC Inc., v. Coley (In re Coley),* 433 B.R. 476, 500 (Bankr. E.D. Pa. 2010). Actions are "willful" if they either have the purpose of producing injury or have a substantial certainty of producing injury. *In re Conte*, 33 F.3d 303, 307-09 (3d Cir. 1994). "Willful injury may . . . be established indirectly by evidence of both the debtor's knowledge of the creditor's . . . rights and the debtor's knowledge that the conduct will cause particularized harm." *In re Paul,* 266 B.R. 686, 696 (Bankr. N.D. Ill. 2001) (citing *In re Longley,* 235 B.R. 651, 656 (B.A.P. 10th Cir. 1999)). An injury is "malicious" if it was caused by a wrongful act done intentionally and without just cause. *In re Coley*, 433 B.R. at 498 (citations omitted); *In re Paul*, 266 B.R. at 696. "Maliciousness" under § 523(a)(6) does not require a showing of "personal hatred, spite or ill-will." *In re Harris*, 2011

7

WL 2877722, *3 (Adv. No. 1-10-ap-00405-RNO, Bankr. M.D. Pa. July 14, 2011). Rather, the focus of the inquiry is on the debtor's intentional commission of a wrongful act that is substantially certain to cause damage to the plaintiff or its interests. When assessing the debtor's intent, a subjective standard is used. "The debt will only be excepted from the discharge . . . if the debtor had 'actual knowledge that harm to the creditor was substantially certain'" to occur. *In re Mirner*, 2010 WL 2653296, *4 (Bankr. N.D. Cal.) (quoting *In re Su*, 290 F.3d 1140, 1145-46 (9th Cir. 2002)).

In the record before me, Debtors admit to having intentionally removed numerous items of personal property affixed to the Property, including interior doors and door moldings, toilets, vanities, kitchen cabinets and countertops, and even the proverbial kitchen sink. They contend that it was their understanding that they were within their rights to remove these items because they were "personal property" and not part of AgChoice's collateral – the real estate. AgChoice counters that the items were affixed to the Property and, thus, became part of the real estate and subject to its liens.

Pennsylvania law on the rights of personal property affixed to real estate is settled. Personal property used in connection with real estate may be divided into one of three classes. Items such as furniture that are not designed to be used in connection with a particular parcel of real estate remain personal property. In contrast, personal property that has been affixed to real estate such that either the real estate or the personal property will be materially damaged if the personal property is removed is considered real property. Finally, some personal property attached to real estate may be removed without destroying or materially injuring either the personal property or the real estate. This latter type of property may be viewed either as part of

8

the real estate or personal property, depending upon the intention of the parties when the property was affixed to the real estate. *Clayton v. Lienhard*, 312 Pa. 433, 436-437, 167 A. 321, 322 (1933) (citations omitted).

The Pennsylvania Supreme Court has described personal property in the second category as "fixtures." When personal property becomes a "fixture," it may not be removed without the consent of all parties who have an interest in the real estate. *Lehmann v. Keller*, 454 Pa. Super. 42, 49, 684 A.2d 618, 625 (1996); *see also Feingold v. Win-Vent, Inc.*, 386 Pa. Super. 127, 562 A.2d 830 (1989) (stating that under the Uniform Commercial Code, "goods are 'fixtures' when they become so related to particular real estate that an interest in them arises under real estate law") (citing 13 Pa. Cons. Stat. Ann. § 9313).

In Pennsylvania, a mortgage is a transfer of a fee simple interest in real property to the creditor. *Sovereign Bank v. Schwab*, 414 F.3d 450, 453 n. 5 (3d Cir. 2005) ("Pennsylvania follows the title theory whereby the mortgage is considered a conveyance in fee simple to the creditor.") (citing *Commerce Bank v. Mountain View Village, Inc.,* 5 F.3d 34, 38 (3d Cir.1993)). It has the dual function of both transferring a property interest from the mortgagor to the mortgagee, while also serving as a lien between the mortgagor or mortgagee as to third parties. *Pines v. Farrell*, 577 Pa. 564, 573-74, 848 A.2d 94, 99-101 (2004); *see also Funches v. Household Fin. Consumer Disc. Co. (In re Funches)*, 381 B.R. 471, 497 (Bankr. E.D. Pa. 2008) (observing that Pennsylvania employs the "title theory" between the mortgagor and mortgagee and the "lien theory" between title holders and third parties). When the mortgage is satisfied, the mortgagee is obligated to file a mortgage satisfaction, which terminates its interest in the Property. *Id*. But until the mortgage is satisfied, it holds a fee simple interest in the property. In

9

the within case, the Mortgages were not satisfied until the Property was recovered through foreclosure after the petition was filed and the automatic stay was lifted. As described in the Mortgages, AgChoice's interest in the Property included all "improvements . . . fixtures and accessories now or hereafter annexed and attached." Therefore, on the date of the petition, AgChoice held a fee simple interest in the real estate, including all improvements and fixtures.

Debtors do not dispute that they removed cabinetry, light fixtures, doors and moldings, door hardware, counters and sinks, toilets and bathroom vanities from the Property. The photographic evidence submitted in support of the motion for summary judgment clearly demonstrates that the real estate was damaged by the removal of these items. One of the kitchens was stripped of cabinetry, exposing bare, unpainted walls. There are numerous lighting receptacles with exposed wiring hanging from gaping holes. Bare bathroom walls are gouged where mirrors or other items were forcibly removed. Unfinished flooring is exposed where toilets once stood. Doors once equipped with handles and deadbolts are non-functional without the necessary hardware. All of these items were fixtures under the ruling of *Clayton v. Leinhard*. Therefore, I conclude that Debtors intentionally removed fixtures that should have remained attached to the Property and that the Property was damaged through the process.[5] Debtors' actions constitute conversion. Under Pennsylvania law, conversion is the deprivation of another's

---

[5]AgChoice also claims damages due to Debtors' removal of certain appliances from the Property, including a dishwasher, microwave, range, refrigerator, and water softener. AgChoice asserts that these items are fixtures based upon Debtors' October 2010 sale advertisement for the Property, which indicated that these items were included in the asking price. Debtors willingness to sell these items with the real estate for a certain price does not necessary make these items "fixtures." The evidence submitted in support of summary judgment does not conclusively show that these appliances were attached to the Property or that physical damage was caused by their removal. Therefore, whether these items constituted "fixtures" is reserved for trial.

10

right in property or the use or possession of property without the owner's consent and without legal justification. *Universal Premium v. York Bank & Trust Co.,* 69 F.3d 695, 704 (3d Cir.1995); *Norriton East Realty Corp. v. Central–Penn National Bank,* 435 Pa. 57, 60, 254 A.2d 637, 638 (1969); *Eisenhauer v. Clock Towers Assoc.,* 399 Pa. Super. 238, 582 A.2d 33, 36 (1990). However, an act of conversion does not necessarily mean that the resulting debt is excepted from discharge under § 523(a)(6). An act of conversion that injures a party is excepted from discharge only if the act produces a willful and malicious injury. *Davis*, 293 U.S. at 332. In this case, summary judgment is appropriate only if there is no genuine issue of material fact that the damage was "willful" and "malicious" as those terms are defined in the statute.

In their depositions and pleadings, Debtors deny that their actions were willful or malicious, averring that they held a sincere belief, however misguided, that the items they removed were their personal property and were not subject to the terms of the Mortgages. When intent is at issue, it is difficult to resolve an adversary complaint by summary judgment. Evaluating state of mind often requires the Court to draw inferences from the conduct of parties about which reasonable persons might differ. *Justofin v. Metropolitan Life Ins. Co.,* 372 F.3d 517, 524 (3d Cir. 2004) (citing *Riehl v. Travelers Ins. Co.,* 772 F.2d 19, 24 (3d Cir.1985)); *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981). *See also Marzano v. Computer Science Corp. Inc.*, 91 F.3d 497, 509 (3d Cir. 1996) (summary judgment is "rarely appropriate" when intent is an issue of material fact); *Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 321 (3d Cir. 2000) (stating that a trial court must be cautious about granting summary judgment when intent is at issue).

Intent is an integral element of a case for nondischargeability under §523(a)(6). For summary judgment to be granted in favor of AgChoice, the Court must be convinced that there is indisputable evidence that Debtors intended to injure AgChoice or that they must have known that the injury was substantially certain to occur. The question before the Court is thus – accepting as true Debtors' averments regarding their beliefs, does the record demonstrate as a matter of law that Debtors' actions were willful and malicious within the meaning of those terms? Although I readily conclude that Debtors intentionally removed fixtures from the Property, converting them to their own use, and damaged the real estate in the process, I am unable to conclude on the record before me that their actions were malicious.

For these reasons, summary judgment will be denied. Trial will be scheduled for the purpose of receiving evidence on Debtors' intent in regard to their conversion of AgChoice's property and, if I find that Debtors' actions were willful and malicious, to receive evidence on AgChoice's claim for damages. An appropriate Order will be entered.

**By the Court,**

Mary D France
Chief Bankruptcy Judge

Date: March 20, 2012