IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| ALBERT L. GLENN and | * | CHAPTER 7 |
| JANET A. GLENN, | * | |
|     Debtors | * | |
| | * | CASE NO. 1:11-bk-02164MDF |
| AGCHOICE FARM CREDIT, ACA, | * | |
|     Plaintiff | * | |
| | * | |
| v. | * | ADV. NO. 1:11-ap-00324MDF |
| | * | |
| ALBERT L. GLENN and | * | |
| JANET A. GLENN, | * | |
|     Defendants | * | |

## OPINION

### I. Procedural History

On March 20, 2012, I issued an Opinion and an Order in the above-captioned matter in which I denied a motion for partial summary judgment filed by AgChoice Farm Credit ("AgChoice"). In the underlying complaint, AgChoice alleged that after it obtained relief from the automatic stay and commenced foreclosure proceedings, Albert and Janet Glenn ("Debtors") removed fixtures from their residence ("the Property"), converted them to their own use, and damaged the premises in the process. AgChoice asserts that because it was damaged by Debtors' willful and malicious actions, its debt should be excepted from discharge under 11 U.S.C. § 523(a)(6).

The March 20 Order included findings of fact and conclusions of law regarding Debtors' actions.[1] I found that Debtors removed items that constituted fixtures, including kitchen

---

[1] The factual findings and legal conclusions of the March 20, 2012 Opinion are hereby adopted by reference.

1

cabinets, ceiling lights, doors units, hardware and trim, commodes, bathroom lights, sinks, and faucets. In my findings, I concluded that Debtors' actions were intentional and damaged AgChoice's interest in the Property. However, I denied summary judgment on the ultimate issue because the record failed to support AgChoice's allegation that Debtors intended to harm AgChoice or that Debtors knew that it was substantially certain that harm to AgChoice would occur. This finding is integral to a determination of whether or not AgChoice's debt is excepted from discharge under 11 U.S.C. § 523(a)(6).

A hearing was held on April 26, 2012 to take testimony on the issue of Debtors' intent. Debtors appeared at the hearing without counsel. AgChoice appeared and adduced evidence through the testimony of one of its loan officers and by calling Albert Glenn ("Glenn") to testify as on cross. The matter is ready for decision.[2]

## II. Factual Findings

Debtors' financial troubles began in March 2009 when Glenn became unemployed. To make ends meet, Debtors paid their living expenses and those of their children by taking cash advances on their credit cards until they reached their credit limit. When they no longer had a source of funds to make their mortgage payments, Debtors requested a mortgage modification. This request, however, was refused because Debtors were unemployed. After the request was denied, AgChoice commenced foreclosure proceedings. When Debtors recognized that they were going to be forced to vacate their home, they tried to find suitable rental housing, but were unsuccessful because of their poor credit rating.

---

[2]This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A), (I) and (O). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052.

Eventually, Debtors' married son purchased a home that was large enough to accommodate his immediate family as well as Debtors and their two unmarried sons. The home, however, needed certain improvements before it could be occupied. To make the home habitable, Debtors removed plumbing, lighting, cabinetry and other fixtures from the Property and installed them in their son's home.Glenn testified that Debtors believed that they were permitted to remove these items based upon the advice of their bankruptcy counsel. He stated that counsel had informed them that they could remove certain items in the category of "personal assets" such as "appliances . . . shelving, ceiling fans [and] window dressings." Glenn did not testify, however, that counsel advised them that it was appropriate to remove interior door units, kitchen cabinets, bathroom vanities, or any of the other fixtures removed by Debtors.

In connection with the removal of cabinetry in one of the home's three kitchens, Glenn testified that the fifteen cabinet units they removed had been built by Janet Glenn's brother as a gift. Glenn commented that having received the cabinets as a gift, " we just naturally assumed we could take them with us."  Glenn insisted that Debtors were "operating out of need and honestly didn't, rightly or wrongly, have any forethought of . . . trying to damage AgChoice." He admitted that in retrospect, they "probably should not have removed some of the things, maybe even all of the things[,]" but he attributed their actions to his own "error in judgment" and not to maliciousness.

After my March 20, 2012 Opinion was issued, AgChoice contacted Debtors and requested that they return the collateral. Debtors refused to return any items. Glenn testified that initially he refused AgChoice's request because he thought that the denial of AgChoice's motion for summary judgment was a final decision in Debtors' favor. When AgChoice's counsel

3

explained that the ruling was only on the procedural motion and not on the merits, Glenn still refused to return the items. He explained that Debtors "needed" the fixtures and that some of the items no longer could be reinstalled at the Property because they had been altered for use at the new home. Glenn further testified that if Debtors returned the fixtures, he and his family would "have no place to live."

## II. Discussion

As indicated above, I concluded in my previous opinion that AgChoice had proven each element of its cause of action under § 523(a)(6), except the element of maliciousness. As I discussed in the March 20, 2012 Opinion, an injury is malicious if it was caused by a wrongful act done intentionally and without just cause. Maliciousness under § 523(a)(6) does not require a showing of personal hatred, spite, or ill-will. Rather, the focus of the inquiry is on the debtor's intentional commission of a wrongful act that either is intended to cause injury or is substantially certain to cause damage to the plaintiff or its interests. *In re Glenn*, 470 B.R. 731 (Bankr. M.D. Pa. 2012). When assessing the element of maliciousness under § 523(a)(6), a subjective standard is used. "The debt will only be excepted from the discharge . . . if the debtor had 'actual knowledge that harm to the creditor was substantially certain'" to occur. *Id.* (citing *In re Su*, 290 F.3d 1140, 1145-46 (9th Cir. 2002)).

In the matter before me, I conclude that when Debtors removed certain fixtures from the Property they had actual knowledge that harm to AgChoice was substantially certain to occur. In the process of ripping out cabinetry and removing lighting and plumbing fixtures, Debtors exposed wires, drains, and pipes and left behind holes in walls and ceilings. The physical harm to the Property would have been impossible to ignore. Debtors had to have been aware that their

4

Case 1:11-ap-00324-MDF    Doc 22    Filed 08/28/12    Entered 08/29/12 07:27:57    Desc
Main Document      Page 4 of 6

actions would force AgChoice to incur substantial costs to renovate the home before it could be sold. Thus, I cannot give credence to Debtors' contention that they did not know that their actions harmed AgChoice. However dire their financial straits, Debtors' "need" for the fixtures they removed does not justify their actions or blind them to the consequence of those actions. Further, it is doubtful Debtors "needed" all the items they removed. Glenn's testimony that Debtors only removed items to make the new home habitable is contradicted by his admission that some of the items have never been installed in their new residence.[3] Debtors took two garage door openers, five thermostats, and four bathroom mirrors. Undoubtably, the new residence would be habitable without *any* garage door openers and something less than five thermostats and four bathroom mirrors.

      Debtors' claim that they did not understand that the fixtures were AgChoice's collateral also is unavailing. A similar defense was asserted and rejected in *In re Wierenga*, 431 B.R. 180 (Bankr. W.D. Mich. 2010). In *Wierenga*, the debtor removed kitchen cabinets, bath fixtures, doors, plumbing, and carpet from his residence after it was lost to foreclosure. The debtor argued that he did not know that the items constituted the mortgagee's collateral because he had purchased them with credit cards. The bankruptcy court summarily rejected this defense, finding that "a mistake of law is not a sufficient excuse to counter a clear intent to remove . . . [the] property. 'Our law is . . . no stranger to the possibility that an act may be intentional for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law.'"

---

[3] Glenn did not identify these items with specificity. Rather, he testified that "[t]here are some things that we have not used at this point, and so if there are things that we have not used, I'm happy to have those returned. We'd have to inventory them, and see what they are." (N.T. 21.)

*Id.* at 185 (quoting *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, ___U.S. ___, 130 S.Ct. 1605, 1611–12 (2010)).

Similarly, Debtors were not justified in removing the cabinets simply because they received them as a gift. Had Janet Glenn's brother fabricated the roof trusses for the structure or hand-cut natural stone for the foundation, it is unlikely Debtors would argue that the trusses or stone could be removed. Damage to the Property was substantially certain to result from Debtors' removal of the cabinets, just as it would have been substantially certain to result from the removal of roof trusses or foundation blocks. Knowledge of this substantial certainty is not altered because the fixtures removed had been specially built and given to them as a gift.

For these reasons, I conclude that AgChoice has met its burden of proving that Debtors intentionally committed a wrongful act by removing fixtures from the Property that was substantially certain to cause damage to AgChoice's interest. An appropriate Order will be entered excepting the debt owed to AgChoice from discharge to the extent of the amount of damages suffered by Debtors' wrongful actions, which will be determined in a further hearing on damages.

**By the Court,**

_Mary D. France_
Chief Bankruptcy Judge

Date: August 28, 2012

6

Case 1:11-ap-00324-MDF    Doc 22    Filed 08/28/12    Entered 08/29/12 07:27:57    Desc
Main Document    Page 6 of 6